UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **VICKIE WILLIAMS** | : | **DOCKET NO. 2:15-cv-440** |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| **ALXIAL CORP., ET AL.** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

On February 25, 2015, defendant Axiall Corp. filed a Notice of Removal in this court removing the instant action on grounds that the requirements for federal subject matter jurisdiction based on diversity of citizenship under 28 U.S.C § 1332 are met.  Before the Court is a Motion to Remand filed by the plaintiff.  For the reasons stated below the plaintiff's motion is **DENIED**.

### I.
### FACTS & PROCEDURAL HISTORY

This is a negligence suit arising from an explosion and resulting fire alleged to have occurred at a refinery owned and operated by Axiall Corp. in Westlake, Louisiana. Doc. 1, att. 1, pp. 1-3.  The incident allegedly caused the release of toxic chemicals, gases, and smoke into the air which affected the surrounding area. *Id*. The plaintiff is a Louisiana resident who claims that she was exposed to the toxic release and that various injuries have resulted. *Id*. at p. 1.  Plaintiff filed a petition in state court alleging negligence and seeking damages against two defendants, Axiall Corp., a foreign corporation and Eagle U S 2 LLC, an entity whose sole member is Eagle Spinco, Inc., a Delaware corporation with its principal place of business in Georgia.  Doc. 1, at p. 3.

While plaintiff's petition sets forth a plethora of injuries and resulting damages, most relevant for our purposes here is the claim that she suffered "past, present, and future increased risk of contracting life threatening disease and/or illness." *Id.* at p. 8. As a result, plaintiff states that pre-existing medical monitoring procedures designed to afford early detection of the various diseases associated with the chemical exposures alleged are necessary and that she "is entitled, as part of the damages for which the Defendants are liable, to have a fund established to provide for these medical monitoring programs." Doc. 1, att. 1, p. 8.

Also included in the petition is a paragraph stating "that the total damages sustained and sought to be recovered by each Petitioner…do not exceed $74,900.00…[and]…[m]oreover each petitioner specifically waives, renounces, and foregoes that portion of any judgment …for such damages…in excess of the stipulated recovery…" Doc. 1, att. 1, p. 9. Specifically referenced in the aforementioned paragraph and separately attached to the petition is a pre-removal "Affidavit And Stipulation" containing the following language:

> I stipulate that my damages in the foregoing Petition do not exceed $74,900.00 nor do I seek to recover damages in excess of $74,900.00, exclusive of interest and costs… Moreover, I expressly waive, renounce, and forgo any portion of any judgment that may be rendered…in my favor…in excess of $74,900.00.

See *Id*. at p. 16. The affidavit and stipulation was signed by the plaintiff before two witnesses. *Id.*

Axiall removed the case to this court asserting that the parties are completely diverse and that the "gravity and quantity of the injuries and damages alleged make it facially apparent that the amount in controversy exceeds $75,000." Doc. 1, p. 4. With respect to the plaintiff's stipulation, Axiall argues that the affidavit addresses only damages and does not limit any injunctive relief sought. *Id* at pp. 11-12. The defendant further asserts that the plaintiff's claim for "medical monitoring" is injunctive in nature and is thus not covered by the stipulation. Axiall contends that

-3-

the amount in controversy is met because from the face of the petition, the plaintiff's requested damages will likely meet the $74,900.00 stipulated amount and her medical monitoring claim (injunctive relief) amounts to an undetermined sum that, for various reasons, would far exceed the $100.01 necessary to establish our jurisdiction over this matter. *Id.* at pp. 13-16.

In support of remand, the plaintiff relies on her pre-removal affidavit arguing that she has legally bound herself to damages under $75,000. Doc. 7, att. 3, pp. 4-5. Plaintiff contends that her medical monitoring claim is not injunctive relief but is a compensable "damage" under Louisiana law, and that they are therefore fully covered by the allegedly binding stipulation. See *Id*. at pp. 5-12.

On June 30, 2015, a hearing was held before this court during which both parties provided oral arguments largely reiterating those made in brief. We have taken all of the arguments into consideration and we now rule on the motion.

## II.
### LAW & ANALYSIS

The burden of proof for establishing federal jurisdiction is placed on the party seeking removal. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If removal is based on diversity of citizenship, the action is removable only if the amount in controversy exceeds $75,000, there is complete diversity, and "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

Since complete diversity clearly exists in this case and the plaintiff does not dispute the issue, the questions we must determine are first, whether the plaintiff's pre-removal stipulation is sufficiently binding to limit her total recovery to an amount less than the jurisdictional threshold, and second, if not, whether Axiall has shown that the requisite amount in controversy is satisfied.

Under Louisiana law plaintiffs in state courts are not permitted to plead a specific numerical value of damages. *Gebbia v. Wal–Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir.2000) (citing La.Code Civ. Proc. Art. 893). Therefore, when a case originally filed in a Louisiana state court is removed to federal court on the basis of diversity, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *Id.* (citing *Lucket v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999)). A defendant may meet this burden by either: (1) showing that it is facially apparent from the petition that the amount in controversy exceeds $75,000.00, or (2) setting forth facts in its removal petition that support a finding of the requisite amount in controversy. *Lucket*, 171 F.3d at 298.

Even if a defendant meets this burden, however, remand is still proper if the plaintiff demonstrates to a "legal certainty" that its recovery will not exceed the jurisdictional amount. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995). As the Fifth Circuit has noted, there are many ways a plaintiff can meet this burden. For instance,

> Plaintiff's state complaint might cite…to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment. **Absent such a statute, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints**; once a defendant has removed the case, *St. Paul* makes later filings irrelevant." *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992) (per curiam).

*Id*. at 1412 (emphasis added).

Applying these principles to the instant case, we first note that plaintiff's stipulation was attached to her state court petition and thus was filed more than three months prior to Axiall's

removal. Consequently, if plaintiff's stipulation limits her total recovery to less than $75,000, our inquiry would end as she would have established to a legal certainty that her recovery would not exceed the jurisdictional amount.  We must still, however, consider whether the plaintiff's medical monitoring claim is included within that stipulation or, more specifically, whether that claim is one for injunctive relief or one for compensatory damages.  To address this issue, we turn to the express language of the petition itself. Paragraph 27 contains plaintiff's prayer for relief with respect to medical monitoring and it reads:

> …Petitioners have been significantly exposed to proven hazardous…substances. Petitioners have manifested symptoms consistent with these exposures and suffer a significantly increased risk of contracting…serious latent diseases, the risk of which is greater than (a) the risk of contracting the same disease had she not been exposed to the Release and (b) the chances of members of the public at large of developing these diseases. There is a monitoring procedure that exists that makes the early detection of these diseases possible and the monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles. Moreover, the prescribed monitoring regime is different from that normally recommended in the absence of exposure and there is…demonstrated clinical value in the early detection…of these diseases. Petitioners are entitled, as part of the damages for which Defendants are liable, to have a fund established to provide for these medical monitoring programs.

Doc. 1, att. 1, p. 8. We find particular significance in the last sentence: "Petitioners are entitled…**to have a fund established** to provide for these medical monitoring programs." *Id*. (emphasis added). In asserting that the plaintiff's medical monitoring claim constitute injunctive relief, the defendant cites *Holcombe v. Smithkline Beecham Corp*., 272 F. Supp. 2d, 792, 799 (E.D. Wis. 2003) wherein the court attempted to differentiate between equitable relief and damages by stating that "[d]amages compensate for past harm, whereas equitable relief looks to the future and is preventative in nature." *Id.*

Here, the plain language of the petition demonstrates that rather than request money damages so that she, herself, could provide for medical monitoring, plaintiff specifically requests that a "fund be established" to do so. Doc. 1, att. 1, p. 8. It is clear that plaintiff is asking the court to issue an order commanding an action, the establishment of a medical monitoring fund.  We cannot conclude that paragraph 27 is anything other than a request for injunctive relief. Rather than seeking damages to establish a fund, she seeks "to have a fund established." *Id.*

Aside from the language of the petition, our conclusion is further bolstered by its structure. The fact that plaintiff specifically requests "future medical expenses" as a part of her compensable "*damages* described in paragraph 28" while her claim for the establishment of a medical monitoring fund is found in paragraph 27 indicates that the two claims are wholly separate and apart from each other. *See* Doc. 1, att. 1, pp. 8-9.  Plaintiff's choosing to plead each claim in separate allegations, in separate parts of the petition suggests to us that the claims are not one in the same as she now insists.  Furthermore, as the defendant notes, countless federal courts across the country[1] that have reviewed such claims seeking the establishment of medical monitoring funds have found them to be injunctive in nature.

Accordingly, we interpret plaintiff's request for the establishment of a medical monitoring fund to be an attempt to seek injunctive relief from this court in addition to the damages sought for "future medical expenses." Doc. 1, att. 1, p. 8-9.[2]

---

[1] *Barnes v. American Tobacco Co.*, 161 F.3d 127, 132 (3d Cir. 1998); *Cf. Doyle v. Coombe*, 976 F. Supp. 183, 185, n.1 (W.D.N.Y. 1997); *In Re: Baycol Prods. Litig.*, 2003 WL 22038708, at *4 (D. Minn. 2003); *Rice v. CSX Transp., Inc.*, 2002 WL 35467650 (N.D.W. Va. 2002); *Dimich v. Med-Pro, Inc.*, 304 F. Supp. 2d 517 (S.D.N.Y. 2004) (quoting *Katz, infra*); *Jackson v. Johnson & Johnson, Inc.*, 2001 U.S. Dist. LEXIS 22329 (W.D. Tenn. 2001); *Rosmer v. Pfizer, Inc.*, 2001 WL 34010613, at *3 (D.S.C. 3/30/2001); *Elliott v. Chicago Hous. Auth.*, 2000 WL 263730, at *15 (N.D. Ill. 2/28/2000);  *Katz v. Warner–Lambert Co.*, 9 F. Supp. 2d 363, 364 (S.D.N.Y. 1998); *Gibbs v. DuPont De Nemours & Co., Inc.*, 876 F. Supp. 475, 477 (W.D.N.Y.  1995); *Raft v. Vanderbilt Univ.*, 174 F.R.D. 396, 406 (M.D. Tenn. 1996); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 713 (D. Ariz. 1993).

[2] Plaintiff has cited *Bourgeois v. A.P. Green Indus., Inc.*, 716 So. 2d 355 (La. 1998) and *Lester v. Exxon Mobil Corp.*, 120 So. 3d 767 (La. Ct. App. 2013) in an attempt to suggest that Louisiana law explicitly provides that medical

It is clear that the plaintiff in this case has affirmatively bound herself to "damages" less than the jurisdictional amount by attaching a stipulation to her petition. It is equally clear from the face of the petition that the damages in this case will likely reach the stipulated limit due to the nature and extent of both the injuries alleged and the damages sought. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995). Indeed, these are very serious injuries with equally serious, far-reaching, and long-lasting consequences. Nonetheless, the language the plaintiff has chosen to use in her stipulation is confined only to judgments for compensatory damages and as we have noted above, damages are not the only relief sought in this case. The plaintiff also seeks injunctive relief in the form of the establishment of a medical monitoring fund which must also be included in any valuation of the amount in controversy. Thus, the final question we must address is whether the plaintiff's medical monitoring fund claim amounts to at least $100.01.

In this circuit, when a party seeks injunctive relief, the amount in controversy is measured by value of the object of the litigation. The object of the litigation is either the value of the right sought to be protected or the extent of the injury sought to be prevented. *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977); *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983); *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1252–53 (5th Cir.1998). Further, the Fifth Circuit has long subscribed to the rule that it is "the value *to the plaintiff* of the right to be enforced or protected that determines the amount in controversy." *Alfonso v. Hillsborough Cnty. Aviation Auth.*, 308 F.2d 724, 727 (5th Cir. 1962) (emphasis added).

---

monitoring claims are recoverable as an item of compensable damages. However, neither court in those cases was confronted with the issue we face here, *i.e.* how to classify the types of remedies sought. Indeed, the *Bourgeois* court explicitly stated, "A…fund compensates…for only the monitoring costs actually incurred. In contrast, a lump-sum award of damages is a monetary award that the plaintiff can spend as he or she sees fit….we offer no opinion concerning whether lump-sum damages are recoverable under Louisiana law." 716 So. 2d at 357, n. 3.

Here, we find that the plaintiff's medical monitoring claim will easily push the relief sought in this case beyond the jurisdictional limit. Attached to the Notice of Removal, is the uncontroverted affidavit of Dr. Robert M. Bourgeois, MD, MPH, FACOEM, a professional both "[b]oard [c]ertified in Occupational and Environmental Medicine…" and "experienced in performing…medical monitoring for workers exposed to…hazardous chemicals." Doc. 1, att. 2, p. 4. According to Dr. Bourgeois, a comprehensive medical monitoring program including protocols, surveillance, examinations, and testing would exceed $75,000. *Id*. at p. 5.

Taking this into consideration, we find that the defendant has met its burden of showing that the amount in controversy is met and we conclude that removal of this action was proper.[3]

### III.
### CONCLUSION

For the reasons stated above, the plaintiffs' Motion to Remand is hereby **DENIED**.

THUS DONE this 24th day of September, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant additionally argues that the unilateral stipulations are not binding because they do not flow from an agreement or compromise between the parties but instead are purely the result of the plaintiffs' own declarations. Defendant cites to various cases that have allowed plaintiffs to revoke unilateral stipulations purporting to limit recovery. *See e.g., Nunez v. Commercial Union Ins. Co.*, 774 So.2d 208 (La. App. 3 Cir. 8/23/00); *Eddy v. State Farm Fire & Cas. Co.*, 2010 WL 1424374 (La. App. 1 Cir. 4/9/10); *Degeyter v. Allstate Ins. Co.*, WL 3339425, at *1-2 (W.D. La. Aug. 23, 2010) *adhered to*, 2010 WL 3829395 (W.D. La. Sept. 24, 2010). While these cases may cast doubt on the binding effect of unilateral stipulations, the federal courts have not been clear on the issue and courts in this district in particular have recognized that uncertainty. *See House v. AGCO Corp.*, 2005 WL 3440834, at *3 (W.D. La. Dec. 14, 2005)("Such a unilateral stipulation may or may not be sufficient in Louisiana; a compromise agreed to by both parties might be required to make the statement irrevocable."). As we find that the amount in controversy is otherwise satisfied, we decline to address this argument.